IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

GTE SOUTHWEST INCORPORATED,

    Plaintiff,

vs.                                                     No. CIV 97-1023 MV/RLP

ERIC SERNA, Chairman, JEROME
BLOCK, Commissioner, and GLORIA
TRISTANI, Commissioner, (In Their
Official Capacities as Commissioners
of the New Mexico State Corporation
Commission), and WESTERN
WIRELESS CORPORATION,

    Defendants.

## **MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Commission Defendants' Motion to Dismiss **[Doc. No. 15]**. The Court, having considered the motion, response, reply, relevant law, and being otherwise fully informed, finds that the Motion is not well taken and will be **DENIED**, as explained below.

### BACKGROUND

In the present case, Plaintiff, GTE Southwest Incorporated ("GTE") seeks an injunction against enforcement and a declaratory judgment regarding the validity of an agreement between it and Defendant Western Wireless Corporation ("Western"). This agreement was arbitrated by the New Mexico State Corporation Commission ("Commission"), with the participation of the named Commission defendants ("Commissioners"), pursuant to the Telecommunications Act of 1996, 47 U.S.C. § 251 *et seq.*

Congress passed the Telecommunications Act in order to foster the rapid development of competition in the provision of local telephone service. The Act "ends the prior regulated- monopoly regime whereby local carriers had exclusive control over local facilities, and replaces it with a pro-competitive regime." *GTE North, Inc. v. McCarty*, 978 F.Supp. 827, 831 (N.D. Ind. 1997).

> [S]ection 251 of the Act requires "incumbent local exchange carriers" (1) to permit other telecommunication carriers to "interconnect" with the incumbent's network (which permits calls to carry between the incumbent's network and the interconnecting carrier's); (2) to provide other carriers "unbundled" access to network elements (so interconnecting carriers can repackage elements and offer them to the public as a competitive service); and (3) to sell to new entrants at wholesale prices all telecommunications services offered to retail customers. 47 U.S.C. § 251(c)(2)-(4). Both incumbents and new entrants are required to negotiate interconnection agreements in good faith. 47 U.S.C. § 251(c)(1).

*U.S. West Comm. Inc. v. TCG Seattle*, 971 F.Supp. 1365, 1369 (W.D. Wash. 1997). If the negotiating companies cannot reach an agreement, section 252 of the Act provides that the parties may request that the appropriate State commission arbitrate the dispute. Regardless of whether the commission was involved in arbitrating the agreement, each interconnection agreement must be submitted to the commission for approval. *See* 47 U.S.C. § 252.

Defendant Western requested that Plaintiff GTE enter negotiations for an interconnection agreement on or about March 29, 1996. Western subsequently submitted a request that the New Mexico State Corporation Commission arbitrate the unresolved issues between it and GTE. The Commission issued an arbitration order on January 2, 1997, and directed Western and GTE to submit an interconnection agreement consistent with the terms of the arbitration order. On February 3, 1997, GTE and Western filed an interconnection agreement as ordered and the Commission issued an order approving the agreement on March 5, 1997. GTE and Western then filed the final, approved agreement with the Commission on March 10, 1997.

GTE filed this action challenging the validity of the interconnection agreement on August 4, 1997. The Telecommunications Act purports to provide for such review through 47 U.S.C. § 252(e)(6) which states:

> In any case in which a State commission makes a determination under this section, any party aggrieved by such determination may bring an action in an appropriate Federal district court to determine whether the agreement or statement meets the requirements of section 251 and this section.

47 U.S.C. § 252(e)(6). GTE seeks a declaratory judgment that the agreement violates the Telecommunications Act, a permanent injunction against enforcement of the agreement, and further declaratory relief as to what the specific terms of the interconnection agreement between it and Western should be. The Commission Defendants filed this Motion seeking dismissal on October 16, 1997, raising issues of immunity and jurisdiction.

## STANDARD OF REVIEW

Federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party seeking to invoke a federal court's jurisdiction sustains the burden of establishing that such jurisdiction is proper. *Penteco Corp. v. Union Gas System, Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction typically take two forms: a facial challenge or a factual challenge. *Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). A facial challenge is an attack on jurisdiction that questions the sufficiency of the complaint. *Id.* In reviewing a facial attack on a complaint, the court must accept the allegations in the complaint

3

as true. A factual attack on subject matter jurisdiction challenges the facts upon which subject matter jurisdiction depends. *Id*. In reviewing a factual attack on subject matter jurisdiction, a court may not presume the truthfulness of the complaint's factual allegations but must go beyond the allegations and evaluate the evidence presented by the parties. *Id.* While the court may refer to evidence extraneous to the complaint in making appropriate factual findings on jurisdictional issues, it generally cannot convert a 12(b)(1) motion into one for summary judgment. *Wheeler v. Hurdman,* 825 F.2d 257, 259 (10th Cir. 1987).

A court, however, is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when "resolution of the jurisdictional question is intertwined with the merits of the case." *Holt,* 46 F.3d at 1003; *Wheeler*, 825 F.2d at 259 n.5. "The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case." *Holt,* 46 F.3d at 1003.

## ANALYSIS

In the pending Motion, the Commission Defendants assert that they are immune from suit pursuant to the Eleventh Amendment, that this Court should abstain from exercising jurisdiction over this case for reasons of comity, and that Plaintiff's "constitutional claims" are barred by the Johnson Act, 28 U.S.C. § 1342.

Time has not been kind to Defendants' Motion. While the issues raised by Defendants appeared unsettled when the instant motion was filed, dozens of district courts have now uniformly rejected the arguments raised here. Finding the reasoning behind this consensus compelling, this Court will also reject Defendants' arguments, as explained below.

4

**1.      Eleventh Amendment Immunity**

The Eleventh Amendment provides that:

The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State or Subjects of any Foreign State.

The Supreme Court has held that the Amendment establishes "that an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state." *Port Authority Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264 (1990) (*quoting Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984)) (internal quotation marks omitted). "Thus, the Eleventh Amendment bars a suit brought in federal court by the citizens of a state against the state or its agencies, *Pennhurst*, 465 U.S. at 100, 104 S.Ct. at 908, and applies whether the relief sought is legal or equitable." *Johns v. Stewart*, 57 F.3d 1544, 1552 (10th Cir. 1995) (quotation marks omitted).

However, "[t]he sovereign immunity afforded by the Eleventh Amendment is not absolute," *Id.* at 1553. Rather, there are "certain well-established exceptions" to its reach. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238, 105 S.Ct. 3142, 3145, 87 L.Ed.2d 171 (1985). "For example, if a state waives its immunity and consents to suit in federal court, the Eleventh Amendment does not bar the action." *Id.* "Further, the Eleventh Amendment does not bar a suit for prospective injunctive relief against a state official acting in violation of federal law." *U.S. West Comm. Inc.,* 971 F.Supp. at 1368 (citing *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)).

In the case at bar, Plaintiff contends that both waiver by the State and the doctrine of *Ex Parte Young* allow the present suit. Finding that the State has in fact waived immunity, the Court will not address the second argument.

5

The Ninth Circuit recently stated that, "[a] state will be deemed to have waived its sovereign immunity when (1) the state expressly consents to suit; (2) a state statute or constitution so provides; or (3) Congress clearly intended to condition the state's participation in a program or activity on the state's waiver of immunity." *Premo v. Martin*, 119 F.3d 764, 770 (9th Cir.1997) (citation omitted). Likewise, other Circuit courts have recently recognized the validity of "conditioned or constructive waiver" of Eleventh Amendment immunity by a State's voluntary participation in a federal legislative or regulatory scheme clearly requiring such a waiver. *See Abril v. Virginia*, 145 F.3d 182, 189-190; *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, 131 F.3d 353, 362-363 (3rd Cir. 1997); Kit Kinports, Implied Waiver After Seminole Tribe, 82 Minn. L. Rev. 793, 807-821 (1998).

The doctrine of conditioned or constructive waiver of Eleventh Amendment immunity traces back to the case of *Parden v. Terminal Ry. of Ala. State Docks Dep't*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964). In *Parden*, the Supreme Court held that the State of Alabama had waived its Eleventh Amendment immunity by owning a railroad and thereby voluntarily engaging in a field subject to extensive federal regulation. *See* 377 U.S. at 184-185. In two later cases, the Court rejected a finding of conditioned or constructive waiver, limiting the application of the doctrine to situations in which Congress had clearly stated an intent to condition State participation in a regulatory scheme on the State's waiver of Eleventh Amendment immunity. *See Abril*, 145 F.3d at 189-190; *College Savings Bank*, 131 F.3d at 362-363; Kinports, Implied Waiver, 82 Minn. L. Rev. at 807-821 (all discussing *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) and *Welch v. Texas Dep't of Highways and Pub. Transp.*, 483 U.S. 468, 107 S.Ct. 2941, 97 L.Ed.2d 389 (1987)). In reality, the Supreme Court has given little attention to the doctrine of conditioned

or constructive waiver, often intermingling the concept with Congressional abrogation of State immunity. *See* Kinports, Implied Waiver, 82 Minn. L. Rev. at 807-10.

However, the recent case of *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996), has renewed the importance of carefully distinguishing Congressional abrogation from conditioned waiver of Eleventh Amendment immunity. Kinports, Implied Waiver, 82 Minn. L. Rev. at 810. In *Seminole Tribe*, the Supreme Court held that Congress could not abrogate the State's Eleventh Amendment immunity when acting pursuant to the Commerce Clause. *Seminole Tribe*, 517 U.S. at 47. While some have concluded that *Seminole Tribe* by implication also abolished the doctrine of constructive or conditioned waiver, the case does not explicitly so hold and indeed goes to lengths to leave open the possibility of conditioned waiver. *See* Kinports, Implied Waiver, 82 Minn. L. Rev. at 810-15 (noting that the Court repeatedly emphasized that a State may waive its Eleventh Amendment immunity in both *Seminole Tribe*, 116 S. Ct. at 1128 and *Idaho v. Coeur d'Alene Tribe of Idaho*, --- U.S. ----, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997)); *see also* Note, Balancing the Scales: The 1996 Telecommunications Act and Eleventh Amendment Immunity, 50 Fed. Comm. L.J. 399 (1998). Since the *Seminole Tribe* decision, federal courts have increasingly recognized the possibility of a constructive or conditioned waiver of Eleventh Amendment immunity.[1] *See Abril*, 145 F.3d at 189-190*; College Savings Bank*, 131 F.3d at 362-363. A state will be deemed

---

[1] The Tenth Circuit has stated that in the realm of Eleventh Amendment immunity "[c]onstructive consent [to suit] is insufficient." *Johns*, 57 F.3d at 1553 (citing *Edelman*, 415 U.S. at 673, 94 S.Ct. at 1360.) These statements, however, have come in response to arguments that a State implicitly waived its immunity by defending a suit in federal court. *See V-1 Oil Co. v. Utah Dept. of Public Safety*, 131 F.3d 1415, 1421 (10th Cir. 1997); *Jicarilla Apache Tribe v. Kelly*, 129 F.3d 535, 537 (10th Cir. 1997); *Johns*, 57 F.3d at 1552. The Tenth Circuit does not appear to have addresses the issue raised here, wether Congress may effectively condition state participation in a regulatory scheme on waiver of the State's Eleventh Amendment immunity.

7

to have waived its immunity by participating in a regulatory scheme established by federal statute "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Premo*, 119 F.3d at 770 (quoting *Port Authority*, 495 U.S. at 305, 110 S.Ct. at 1873) (alteration in original).

In the present case, the State of New Mexico has not explicitly waived its immunity with regards to actions brought under section 252 of the Telecommunications Act. The legislature has adopted no statute or constitutional amendment authorizing it to be sued in federal court pursuant to section 252. Further, the Telecommunications Act was passed pursuant to the Commerce Clause; therefore, if Congress intended to abrogate State immunity from suit under the statute, it could not do so. *Seminole Tribe*, 517 U.S. at 47. Thus, any finding of waiver in this case must be based on the State's acts rather than its words and the express provisions of the Telecommunications Act.

The Telecommunications Act provides for State involvement in the deregulation of local telephone service through arbitration of disputes and through the approval or rejection of interconnection agreements. 47 U.S.C. § 252(a), (b), and (e). But the Act does not require State involvement. Indeed, the Act permits a State to "opt out" completely from any regulatory role. Section 252(e)(5) provides:

> If a State commission fails to act to carry out its responsibility under this section in any proceeding or other matter under this section, then the Commission [FCC] shall issue an order preempting the State commission's jurisdiction of that proceeding or matter within 90 days after being notified (or taking notice) of such failure, and shall assume the responsibility of the State commission under this section with respect to the proceeding or matter and act for the State commission.

47 U.S.C. § 252(e)(5). As the Western District of Washington explained in the first published cases to addressing the issues raised here,

8

> [i]f the state commission does act, however, the Act makes clear that the commission's actions will be reviewable in federal court. Section 252(e)(6) provides that where a state commission makes a determination regarding an agreement, any aggrieved party "may bring an action in an appropriate Federal district court to determine whether the agreement meets the requirements" of the Act. Further, the Act prohibits state court review of state commission actions in approving or rejecting agreements. See 47 U.S.C. § 252(e)(4) ( "No State court shall have jurisdiction to review the action of a State commission in approving or rejecting an agreement under this section.").

*U.S. West Comm. Inc.,* 971 F.Supp. at 1369.

Every district court reviewing the question, from all across the nation, has concluded that

> [t]he "overwhelming implication" of this statutory structure is that Congress conditioned state participation in the interconnection agreement negotiation, arbitration and approval process on consent to federal judicial review of the state's participatory actions. A state is permitted--but not required--to act as the principal regulatory body in the process. But the statute makes clear that if a state accepts Congress's invitation, its actions will be reviewable in federal court. There is "no room for any other reasonable construction" of the statute. *Port Authority*, 495 U.S. at 305, 110 S.Ct. at 1873.

*U.S. West Comm. Inc.,* 971 F.Supp. at 1369; *see also Illinois Bell Telephone Co. v. Worldcom Technologies, Inc.*, 1998 WL 547278 *3 (N.D. Ill. Aug 27, 1998); *Michigan Bell Tel. Co. v. MFS Intelenet of Michigan, Inc.*, 1998 WL 413749, *6 (W.D. Mich. July 21, 1998) (citing *Michigan Bell Tel. Co. v. Climax Tel. Co.*, No. 5:97CV197, Transcript of Hearing at 5 (W.D.Mich. Feb. 12, 1998) (Quist, J.); *MCI Telecomm., Corp. v. BellSouth Telecomm., Inc.*, --- F.Supp. ----, No. 97-76, 1998 WL 325953, *3 (E.D. Ky. June 29, 1998); *U.S. West Comm., Inc. v. Public Service Comm. of Utah*, 991 F.Supp. 1299, 1301-02 (D. UT 1998); *MCI Telecomm. Corp. v. Illinois Bell Tel. Co.*, No. 97 C 2225, 1998 WL 156678, *8 (N.D.Ill. Mar.31, 1998); *AT & T Comm., Inc. v. Michigan Bell Tel., Co.,* Nos. 97-CV-60018, 97-CV-60176, slip op. at 6- 7, 9 (E.D.Mich. Mar. 19, 1998); *AT & T Comm., Inc. v. BellSouth Telecomm., Inc.*, Nos. 1:97-cv-884-RCF, 1:97-cv-1318-RCF, slip op. at

5 (N.D.Ga. Feb. 11, 1998); *U.S. West v. TCG Oregon*, No. 97-858-JE, slip op. at 15 (D.Ore. Jan. 30, 1998); *MCI Telecomm. v. AT & T Comm.*, No. 3:97-0523, slip op. at 11-12 (M.D.Tenn. Jan. 27, 1998); *MCI Telecomm., Inc. v. Bell Atlantic-Virginia Inc.*, No. 3:97CV629, slip op. at 5 (E.D.Va. Dec. 24, 1997); *AT & T Comm. v. BellSouth Telecomm., Inc.*, No. 97-79, slip op. at 5-6 (E.D.Ky. Dec. 15, 1997); *AT & T Comm., Inc. v. BellSouth Telecomm., Inc.*, Nos. 3:97-2164, 3:97- 2388, slip op. at 4-5 (D.S.C. Dec. 11, 1997); *MCI Telecomm., Inc. v. Sprint- Florida, Inc.*, No. 4:97-CV-231-MP, slip op. at 5 (N.D.Fla. Nov. 21, 1997); *AT & T Comm., Inc. v. BellSouth Telecomm.*, Nos. 5:97-CV-405-BR, 5:97-CV-425- BR, slip op. at 10-11 (E.D.N.C. Nov. 20, 1997); *GTE South v. Morrison*, No. 3:97CV493, slip op. at 4 (E.D.Va. Nov. 7, 1997); *GTE Midwest, Inc. v. Thoms*, No. 4:97-CV-70118, slip op. at 5 (S.D.Iowa Aug. 4, 1997); *U.S. West Comm., Inc. v. Thoms*, 4-97-CV-70082, slip op. at 5 (S.D.Iowa Aug. 4, 1997); *U.S. West Comm., Inc. v. Reinbold*, No. A1-97-25, slip op. at 7 (D.N.D. July 28, 1997); *MCIMetro Access Transmission Servs, Inc. v. GTE Northwest, Inc.*, Nos. C97- 742WD, C97-905WD, C97-928WD, slip op. at 1 (W.D.Wash. July 24, 1997)).

As the Western District Court for Washington summarized, "[t]he Telecommunications Act . . . expressly states that state commission action is reviewable in federal court and nowhere else. 47 U.S.C. § 252(e)(4); (5). The implication that Congress conditioned state participation in the interconnection agreement process on waiver could hardly be clearer." *U.S. West Comm. Inc.,* 971 F.Supp. at 1369. Further, recent cases have recognized that the jurisdictional grant and corresponding waiver of immunity contained in the Act are extremely limited: the federal courts are authorized to review only completed and approved interconnection agreements and only to determine if those agreements are consistent with the requirements of the Telecommunications Act. *See MCI*

*Telecomm. Corp. v. Frisby*, 998 F.Supp. 625, 630 (D. Md. 1998); *GTE Northwest, Inc. v. Nelson*, 969 F.Supp. 654 (W.D. Wash. 1997); *GTE South, Inc. v. Morrison*, 957 F.Supp. 800 (E.D. Va. 1997). The states retain Eleventh Amendment immunity with respect to all other issues.

Although this Court recognizes that the continued viability of the doctrine of conditioned waiver is not certain in the aftermath of *Seminole Tribe*, the Court finds the undeviating and uncontradicted reasoning of its sister courts compelling. Further, given the need for uniformity in the application and interpretation of federal statutes, the Court chooses not to disrupt this consensus absent a contrary ruling from even one Circuit Court of Appeals. Therefore, the Court agrees that because the "overwhelming implication" of the Telecommunications Act is that a State's voluntary participation in the regulatory scheme is dependent on the State waiving its immunity from suit in federal court-- to the limited extent provided by the statute-- the State of New Mexico waived its immunity when it voluntarily chose to involve itself in the arbitration and approval of interconnection agreements under the Act.[2] Accordingly, the State Commissioners are not immune from suit under the Act.

2.   **Abstention**

---

[2] Defendant Commissioners further argue that they do not have the authority to waive Eleventh Amendment immunity for the State. While it is true that the Commissioners lack the authority to explicitly waive State immunity from suit, *see V-1 Oil Co.*, 131 F.3d at 1421; *Jicarilla Apache Tribe*, 129 F.3d at 537, the doctrine of conditioned waiver necessarily requires that a State's immunity can be waived by a properly authorized agent of the State involving the State in the regulatory scheme at issue. Defendants acknowledge and indeed affirmatively assert that they were acting as agents of the state, within the bounds of their authority, at all times. Therefore, any argument that they lacked the authority to constructively waive the State's immunity by their actions is unavailing.

The Commission Defendants next ask this Court to abstain from exercising jurisdiction over this case on grounds of comity. *See Younger v. Harris*, 401 U.S. 37 (1971); *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943).

As the Supreme Court has stated numerous times, "[i]t is axiomatic . . . that '[a]bstention from the exercise of federal jurisdiction is the exception, not the rule.' Abstention rarely should be invoked, because the federal courts have a 'virtually unflagging obligation . . . to exercise the jurisdiction given them.'" *Ankenbrandt v. Richards*, 504 U.S. 689, 705, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1991) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976)). On occasion, the principles of comity and federalism do require a federal court to abstain from exercising jurisdiction in a case otherwise properly before it. *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 723, 116 S.Ct. 1712, 135 L.Ed.2d 1 (1996). Application of the doctrine of abstention, however, "is contingent upon the availability of an adequate state remedy." *See Michigan Bell Tel. Co.*, 1998 WL 413749, *8; *Colorado River*, 412 U.S. at 809; *Arizona v. Apache Tribe of Arizona*, 463 U.S. 545, 559-60 (1983). Because the federal courts have exclusive jurisdiction over Plaintiff's claims under the Telecommunications Act, there is no adequate state remedy available. Therefore, abstention is not appropriate in this case.

**3.    The Johnson Act**

Finally, the Commission Defendants argue that Plaintiff's "constitutional claims"[3] are barred by the Johnson Act. 28 U.S.C. § 1342.

---

[3]Plaintiff's Complaint seeks a declaration that the interconnection agreement violates the Telecommunications Act. In explaining how the agreement violates the Act, Plaintiff argues that the agreement effectuates a "taking" of private property, which Plaintiff argues must be barred under the Act in order for the Act to be constitutional. It is not apparent to the Court that this is actually a "constitutional claim" rather than an argument as to why the agreement fails to meet the requirements of the Telecommunications Act.

The Johnson Act provides that:

The district court shall not enjoin, suspend or restrain the operation of, or compliance with, any order affecting rates chargeable by a public utility and made by a state administrative agency or rate-making body of a State political subdivision, where:

(1) Jurisdiction is based solely on diversity of citizenship or repugnance of the order to the Federal Constitution; and,

(2) The order does not interfere with interstate commerce; and,

(3) The order has been made after reasonable notice and hearing; and,

(4) A plain, speedy and efficient remedy may be had in the courts of such state.

28 U.S.C. § 1342. "The Johnson Act applies to deprive a federal court of jurisdiction to review [Commission] orders only when all four of its conditions are met." *U.S. West Comm., Inc.*, 991 F.Supp. at 1302 (citing *Hawaiian Tel. Co. v. Public Util. Comm'n*, 827 F.2d 1264, 1273 (9th Cir.1987), cert. denied, 487 U.S. 1218, 108 S.Ct. 2870, 101 L.Ed.2d 906 (1988)); *see also Tennyson v. Gas Service Co.*, 506 F.2d 1135, 1139 (10th Cir. 1974).

In the present case, assuming without deciding that the Complaint concerns public utility rate and that the Complaint raises constitutional issues, the Johnson Act nevertheless does not apply because all four of its prerequisites cannot be met. As the District Court of Utah explained in an identical case,

> [f]irst, the Johnson Act applies to preclude jurisdiction only when "[j]urisdiction is based *solely* on diversity of citizenship or repugnance of the order to the Federal Constitution." 28 U.S.C. § 1342(1). [Plaintiff's] challenge to the arbitration order is based not only on the Federal Constitution, but on provisions of the Act as well. Second, the Johnson Act applies only if [Plaintiff] has "a plain, speedy and efficient remedy . . . in the [State] courts." 28 U.S.C. § 1342(4). As noted above, however, the Act explicitly bars state courts from determining whether interconnection agreements comply with the Act. *See* 47 U.S.C. § 252(e)(4).

*U.S. West Comm., Inc.*, 991 F.Supp. at 1302 (emphasis added). Accordingly, because the conditions of the Johnson Act have not been met, the Johnson Act does not preclude this Court's exercise of

13

jurisdiction over Plaintiff's claims. *Id.; see also Michigan Bell Tel. Co. v. MFS Intelenet of Michigan, Inc.*, 1998 WL 413749, *8 (W.D. Mich. July 21, 1998) (citing *AT & T Comm., Inc. v. Michigan Bell Tel.*, Co., Nos. 97-CV-60018, 97-CV-60176, slip op. at 10 (E.D.Mich. Mar. 19, 1998); U.*S. West Comm. v. TCG Oregon*, No. 97-858-JE, slip op. at 18 (D.Ore. Jan. 30, 1998);*MCI Telecomm., Inc. v. Sprint-Florida, Inc.*, No. 4:97-CV-231-MP, slip op. at 4 n. 1 (N.D.Fla. Nov. 21, 1997); *MCI Telecomm., Inc. v. BellSouth Telecomm., Inc.*, No. 4:97-CV-141-RH, slip op. at 4 n. 1 (N.D.Fla. Nov. 21, 1997)).

## CONCLUSION

**IT IS THEREFORE ORDERED** that Commission Defendants' Motion to Dismiss **[Doc. No. 15]** is hereby **DENIED**.

_____
MARTHA VÁZQUEZ
UNITED STATES DISTRICT JUDGE

Attorneys for Plaintiff:
David Kaufman
Deborah Dorman-Rodriguez

Attorneys for Defendants:
Thomas Scarvie
Eric Burris